[Civ. No. 6045.   Third Appellate District.—July 12, 1939.]

O. H. MYRICK, Appellant, v. WILLIAM H. O'NEILL et al., Respondents.

O. H. Myrick, *in pro. per.*, and Albert S. Brown for Appellant.

Avery M. Blount and B. B. Gillette for Respondents.

HELD, J., *pro tem.*—On May 1, 1931, and for some time prior thereto, title to the premises involved in this action was in Susana Land Company, a California corporation.   The corporation failed to pay its franchise tax in 1930, and thereupon and on May 1, 1931, its corporate powers, rights and privileges were suspended pursuant to section 32 of the Bank and Corporation Franchise Tax Act.   (Deering's 1937 General Laws, Act 8488.)   There has been no revivor of corporate powers.   After the date of such suspension, and on December 11, 1931, the corporation executed a deed for the premises to Susan McNally, and on December 15, 1931, said Susan McNally executed to defendants a promissory note and a mortgage on said premises to secure payment of said promis-

sory note. The deed and mortgage were recorded on January 6, 1932, in the office of the county recorder of the county of Los Angeles.

On March 19, 1932, the plaintiff herein instituted an action in the municipal court of the city of Los Angeles against Susan McNally and Susana Land Company, a corporation, to recover the sum of $1999 for services rendered. After trial had, plaintiff was awarded judgment against the corporation alone for the sum of $600. Judgment was entered on October 31, 1932. Execution issued thereon, and levy made by the sheriff on the premises herein involved. On August 14, 1933, the premises were sold by the sheriff at execution sale to plaintiff herein for $713.63. No redemption was made from the sale, and on August 15, 1934, plaintiff received sheriff's deed.

The complaint in the present action as originally filed, alleged four causes of action. The first was in the usual form to quiet title, and the allegations thereof were, by reference, incorporated in each of the subsequent counts, and, in addition thereto, the second, third and fourth causes of action contained allegations setting forth the suspension of corporate powers of Susana Land Company, the execution of the deed and mortgage after such suspension, and other matters which by a fair construction of the pleading constituted the same a bill *quia timet* to remove the cloud upon plaintiff's title arising out of the execution of the deed and mortgage, the validity of which were thus directly attacked.

On motion of defendants, there was stricken from the complaint all the allegations thereof, except those contained in the first cause of action and by reference incorporated in the subsequent ones. The complaint thus became one simply to quiet title, and in nowise involved a direct attack on the deed and mortgage.

The defendants' answer denied the allegations of the complaint, and in addition set up three affirmative defenses; the first, alleging that defendants hold a mortgage on the premises; the second, that said mortgage was a lien at the time plaintiff acquired title; and the third, that plaintiff had knowledge of the existence of the mortgage and the lien thereof when he acquired title at execution sale.

Plaintiff had judgment in the court below, quieting his title to the premises, but subject to the lien of the mortgage exe-

cuted by Susan McNally on December 15, 1931. Plaintiff appeals from the judgment.

Appellant contends that the deed executed by Susana Land Company to Susan McNally was void by reason of the suspension of the corporate powers of the grantor; that therefore defendants acquired no lien by the mortgage executed to them by Susan McNally, and that the trial court erred in holding that appellant's title is subject to the lien of said mortgage. If the deed of the corporation was absolutely void, it conveyed no title to Susan McNally. If, on the other hand, it was voidable only, it was valid until cancelled on direct attack. Here under the pleadings as they were at the trial, there was no such direct attack; the complaint sought to quiet title, defendants set up their mortgage, and on rebuttal plaintiff showed suspension of the corporate powers of Susana Land Company.

In support of his contention that the deed of the corporation to Susan McNally is void, appellant cites Political Code, section 3669c, second paragraph, and section 32 of the Bank and Corporation Franchise Tax Act. On May 1, 1931, the date of the suspension of the powers of the corporation, section 3669c of the Political Code (Stats. 1919, p. 181), among other provisions, contained the following: "Every contract made in violation of this section is hereby declared to be *void.*" Section 32 of the Bank and Corporation Franchise Tax Act then (Stats. 1931, p. 64) provided that "every contract made in violation of this section is hereby declared to be *voidable*". The suspension in the instant case was expressly declared to be "pursuant to the provisions of section 32 of the Bank and Corporation Franchise Tax Act of the State of California". That section would appear to govern the situation here.

In 1910 there was adopted a constitutional amendment adding section 14, article XIII, to the Constitution of this state, providing for the separation of state and local taxation, and for the taxation of certain corporations for the benefit of the state. Subdivision (d) covered corporations such as the Susana Land Company. Subdivision (f) provided that "the legislature shall pass all laws necessary to carry this section into effect". The legislature thereupon enacted, and on April 1, 1911, there was approved by the governor, an act to comply with the constitutional mandate. (Stats. 1911, p. 530.) Amendments to this act were made in 1913 and

1915. (Stats. 1913, pp. 3 and 615; Stats. 1915, pp. 3 and 937.) In 1917, a revision of the act approved April 1, 1911, and amendments thereto, was made, and a substitute therefor enacted. This substitute was incorporated in the Political Code, and after repealing certain existing sections, added others, among them section 3669c. The latter section was amended in 1919 (Stats. 1919, p. 181), to read as it stood at the date of the suspension of powers of the corporation here involved. In November, 1928, section 16 of article XIII was added to the Constitution, and subdivision 2 (a) of that section provided that corporations subject to be taxed pursuant to subdivision (d) of section 14, in lieu of the tax thereby provided for, should annually pay to the state for the privilege of exercising their corporate franchises within the state a tax equal to four per cent of their net incomes. The amendment also enjoined upon the legislature the duty to pass a law to carry the provision into effect, and in 1929, there was enacted the Bank and Corporation Franchise Tax Act (Stats. 1929, p. 19), which was amended in 1931 (Stats. 1931, p. 64) to read as it stood at the date of the suspension of powers of the corporation here involved. The effect of the constitutional amendment of November 6, 1928, and the legislation enacted pursuant thereto, was to substitute an excise or license tax authorized by subdivision 2 (a) of section 16, article XIII for the *ad valorem* or property tax theretofore authorized by subdivision (d) of section 14, Article XIII, and thereafter the legislature was without power to provide for an *ad valorem* franchise tax. (*City Investments, Ltd.*, v. *Johnson*, 6 Cal. (2d) 150 [56 Pac. (2d) 939].)

The tax, in the payment of which the corporation here defaulted, was the excise or license tax; and on nonpayment, the situation was governed by section 32 of the Bank and Corporation Franchise Tax Act, and not by section 3669c of the Political Code. The latter section has no application here whatever.

As we have seen, section 32 of the Bank and Corporation Franchise Tax Act does not by its terms render void a contract entered into by a corporation while its powers are suspended. The language is that it is voidable. Nor are the cases of *Cleveland* v. *Gore Bros., Inc.*, 14 Cal. App. (2d) 681 [58 Pac. (2d) 931], and *Boyle* v. *Lakeview Creamery Co.*, 9 Cal. (2d) 16 [68 Pac. (2d) 968], authority for holding a contract under such circumstances void. In the former case

the assignee of a corporation whose powers were suspended was denied the right to maintain an action; and in the latter case, the right to defend was denied a corporation under suspension.

On the other hand, in *Depner* v. *Joseph Zukin Blouses,* 13 Cal. App. (2d) 124 [56 Pac. (2d) 574], under similar circumstances as those which exist here, it was said that "a voidable contract is one which may be rendered null at the option of one of the parties, *but is not void until so rendered".* This case was followed in *Storrs* v. *Belmont Gold Min. & Mill. Co.,* 24 Cal. App. (2d) 551 [76 Pac. (2d) 197]. In each case, a hearing in the Supreme Court was denied.

It is significant that section 32 of the Bank and Franchise Corporation Tax Act, which as originally enacted read in part that "every contract made in violation of this section is hereby declared to be voidable", continued so to provide until the legislature in 1935 (Stats. 1935, p. 1000), added the words "at the instance of any party other than the taxpayer". The inference to be drawn from this amendment is that until the language was so added such a contract was voidable at the instance of anyone, including the taxpayer. The amendment operates as a restriction in that regard. It certainly could not be contended that as the section reads at present a contract is absolutely void and not merely voidable.

The deed in question being in the first instance voidable merely, and not void, and there having been no adjudication since, adjudging its invalidity, operated to convey title to Susan McNally, and her mortgage to defendants created a lien upon the premises herein involved, and the trial court was correct in its conclusions.

The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 11, 1939, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 5, 1939.