[No. A019890. First Dist., Div. Three. Oct. 24, 1984.]

THOMAS G. HONG et al., Plaintiffs and Appellants, v.
SOMERSET ASSOCIATES et al., Defendants and Respondents.

112

**COUNSEL**

James G. Lea and Miller & Lea for Plaintiffs and Appellants.

Vivian L. Kral and Thoits, Lehman & Love for Defendants and Respondents.

**OPINION**

**ANDERSON, J.**—In this case we are called upon to decide whether there was sufficient evidence to support the trial court's finding that a liquidated

damages provision in a nonresidential real estate purchase contract was reasonable under the circumstances. We find the evidence sufficient to support the finding of reasonableness and therefore affirm the judgment.

During August and September 1980, plaintiffs, Thomas G. Hong, Jennie F. Hong, Allen G. Fong and Gladys J. Fong (hereafter Buyers) entered into negotiations with Somerset Associates and its agents (hereafter Seller) for the purchase of a 36-unit apartment complex, located in Mountain View, at a sales price of $1,325,000. Early in the negotiations, a three-page "Agreement of Sale and Deposit Receipt" was prepared by Seller, consisting of a one-page preprinted form with thirteen terms of sale and a two-page typewritten "Addendum," with fourteen other terms of sale or other provisions.[1]

Approximately a month later, after certain contingencies had been removed and items requiring repairs had been identified, another typewritten addendum was prepared for signature. It was one and one-half pages long and included eight numbered paragraphs, including a new liquidated damages provision, typed uniquely and entirely in capital letters, providing for recovery of $25,000 by the Seller in the event of default by the Buyers. As executed, this liquidated damages clause appears to have been separately initialed by each party to the contract.[2] The contract was signed by all parties, as of October 8, 1980, with close of escrow to take place on January 2, 1981.

On November 13, 1980, Buyers sought to rescind the "Agreement of Sale" and requested restitution of the $25,000 deposit referred to in the liquidated damages provision, claiming Sellers had withheld information regarding the possibility of a rent control ordinance being enacted in Mountain View. When Seller refused to recognize the rescission or agree to return the $25,000, Buyers filed a complaint for rescission and restitution in the superior court.

Following a court trial, the court found that plaintiff had failed to prove any fraudulent misrepresentations by Seller or its agents. Concerning the $25,000, the court found that the liquidated damages provision, "considering the selling price and other relevant terms of this contract, was fair and reasonable under the circumstances." Judgment was entered for de-

---

[1] Although not fully executed at that stage of the negotiations, page one of the typewritten addendum contained a liquidated damages provision in the amount of $20,000. Set out entirely in distinctive capital letters, that provision bore the handwritten initials, "TGH," presumably those of Thomas G. Hong, the primary buyer.

[2] The addendum to the agreement, with the liquidated damages clause at issue, appears in its original form in the attached appendix. (See *post,* pp. 117-118.)

fendant Seller. On appeal, Buyers challenge only the finding that the liquidated damage provision was reasonable.

## DISCUSSION

Before July 1, 1978, there was a tendency on the part of the courts to severely limit the use of liquidated damage provisions. Under former Civil Code[3] sections 1670 and 1671, a liquidated damages clause was presumptively invalid unless the damages that arose from the breach would be difficult to ascertain. The proponent of a liquidated damages clause in an agreement executed before July 1, 1978, had the burden of proving three foundational facts: (1) an agreement between the parties, (2) impracticability or extreme difficulty of fixing actual damages, and (3) a reasonable endeavor to agree on an amount bearing a reasonable relationship to actual damages. (See, e.g., *Barbera* v. *Sokol* (1980) 101 Cal.App.3d 725, 732-733 [161 Cal.Rptr. 843].) Although liquidated damage clauses are intended to prevent litigation altogether, the effect of the rule for pre-July 1978 agreements was to merely shift the facts that the seller must prove from the actual damages to the content of the parties' negotiations. (See Cal. Real Property Sales Transactions (Cont.Ed.Bar 1981) § 12.29, p. 699.)

In response to a recommendation of the California Law Revision Commission (Recommendation Relating to Liquidated Damages, 13 Cal. Law Revision Com. Rep. (1976) p. 1739), the Legislature in 1977 enacted section 1671 et seq., which became effective July 1, 1978. (Stats. 1977, ch. 198, § 5.) Under this new legislation, three major categories of agreements containing liquidated damage clauses were recognized, each with its own set of requirements for determining their validity: (1) certain consumer contracts and dwelling leases (§ 1671, subd. (c));[4] (2) contracts to purchase and sell "residential property" (§ 1675)[5] and (3) contracts to purchase and sell all other real property (§ 1676). The contract clause in this case falls in the latter category. No reported case has yet construed those particular provisions.

---

[3]Unless otherwise stated, all statutory references are to the Civil Code.

[4]As the consumer or lessee is often unsophisticated, the prior law under former sections 1670 and 1671 discouraging the use of liquidated damage clauses continues to apply. (See Cal. Law Revision Com. com., § 1671.)

[5]For purposes of the liquidated damages legislation, "residential property" means real property primarily consisting of a dwelling that meets both of the following requirements: (1) The dwelling contains not more than four residential units; (2) at the time the contract to purchase and sell the property is made, the buyer intends to occupy the dwelling or one of its units as his or her residence. (§ 1675, subd. (a).) The validity of liquidated damage clauses in agreements involving residential property are governed by sections 1675, 1677 and 1678. (§ 1675, subd. (b).)

 In an agreement for the purchase and sale of real property other than residential property, a provision in the contract liquidating the damages to the seller if the buyer fails to complete the purchase of the property is valid if it satisfies the requirements of sections 1677 and 1671, subdivision (b). (§ 1676.) Section 1677 sets out the formal requirements for a valid liquidated damages provision. First, the provision must be separately signed or initialed by each party to the contract. (§ 1677, subd. (a).) ██ This requirement was adapted from the real estate purchase contract and receipt for deposit approved for use in simple transactions by the California Real Estate Association and the State Bar, and was intended to make it more likely that the parties would appreciate the consequences of this important provision. (Cal. Law Revision Com. com., § 1677.)[6] Second, *if the provision is included in a printed contract,* it must be set out in at least 10-point bold type or in contrasting red print in at least 8-point bold type. (§ 1677, subd. (b).) This requirement is designed to provide further assurance that the parties will be aware of the consequences of the liquidated damages provision. (Cal. Law Revision Com. com., § 1677.)

If the liquidated damages clause in a nonresidential property agreement meets the formal requirements in section 1677, it is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made. (§ 1671, subd. (b); see Cal. Law Revision Com. com., § 1676.) The validity of the liquidated damages provision depends upon its reasonableness at the time the contract was made and not as it appears in retrospect. Accordingly, the amount of damages actually suffered has no bearing on the validity of the liquidated damages provision. (Cal. Law Revision Com. com., § 1671, subd. (b).)

██ Turning to the instant case, the liquidated damage clause appears in a contract for the purchase and sale of a 36-unit apartment, so the statutory requirements applicable to nonresidential property govern. (§ 1676.) Each of the four Buyers and two persons representing Seller separately initialed the liquidated damages clause. (§ 1677, subd. (a), see fn. 2.) As this portion of the contract was typewritten rather than printed, subdivision (b) of section 1677 does not apply. Nevertheless, the clause is distinctively set out in that it is the only operative paragraph typed entirely in capital letters. The provision more than meets the formal requirements prescribed by section 1677.

---

[6]A report of the Law Revision Commission proposing a statute that is subsequently adopted by the Legislature without change is entitled to substantial weight in ascertaining legislative purpose and intent. (*Guthman* v. *Moss* (1984) 150 Cal.App.3d 501, 510 [198 Cal.Rptr. 54].)

Further, the evidence is overwhelming that the provision was reasonable under the circumstances existing at the time the contract was made, and Buyers failed to meet their burden to show at trial that the provision was unreasonable. Buyers were not naive, unsophisticated purchasers buying their first home. The close of escrow was set for January 2, 1981, so Buyers could sell a 40-unit apartment in Texas, and successfully complete a tax-deferred exchange with the property. As the sale was for $1,325,000, the $25,000 liquidated damages equalled less than 2 percent of the purchase price.[7] Pending the close of escrow, it was understood and contemplated when the agreement was signed, that the property would be taken off the market as to other potential buyers; that seller would be making repairs, making mortgage payments and maintaining insurance on the property.

Under section 1671, subdivision (b), Buyers had the burden of proving, by a preponderance of the evidence, that the liquidated damages clause was unreasonable under the circumstances existing at the time the contract was made. (2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 46.5, p. 1729.) Buyers failed to meet that burden.

The judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.

---

[7]If the amount paid pursuant to a liquidated damages provision in a *residential property* sales agreement does not exceed 3 percent, there is a statutory presumption that the provision is valid. (§ 1675, subd. (c).) If the amount exceeds 3 percent, the provision is presumed invalid. (§ 1675, subd. (d).)

There was testimony that an amount approximating 2 percent was standard in commercial real estate transactions.

APPENDIX

September 30, 1980

ADDENDUM TO PURCHASE CONTRACT BETWEEN SOMERSET ASSOCIATES AND
THOMAS G. HONG, ET AL, FOR THE PURCHASE OF SOMERSET APARTMENTS,
2210 ROCK STREET, MOUNTAIN VEIW, CALIFORNIA

1. Seller hereby removes the contingency described in paragraph 15
 regarding Seller's approval of Purchaser's financial statements.

2. Seller agrees to pay off in full, at or before close of escrow,
 Bond Series 88N, dated June 2, 1969 for Rock Street Independence
 Avenue Project #67-4, Assessment No. 21 as described in Santa Clara
 County Title Company Preliminary Title Report Number 902370 in the
 amount of $3,380.07.

 Buyer hereby approves of Preliminary Title Report Number 902370 and
 removes the contingency described in paragraph 3 and paragraph 4 of
 the above-referenced contract.

3. Seller agrees to contract to have the items listed in Section I of
 ʻble Exterminators, Inc. structural pest control report #WS-29624
 corrected prior to close of escrow. In addition, Seller agrees to
 perform the following repairs recommended by Purchaser:

 a) Fix broken window in apartment #22.
 b) Secure loose faucet in exterior wall near apartment #14.
 c) Fix hot water heater at the rear of building #8.
 d) Fix plumbing leak under the kitchen sink of unit #10.
 e) Repair the soft floor near the bedroom entrance and bathroom
 of apartment #8.
 f) Repair all cracked shower doors.

 Seller shall provide Buyers with paid receipts for all completed
 work, prior to close of escrow. → , AGF JH 9.7.H. CSuc CMK

4. Buyer hereby removes the following contingencies and approves of
 the following inspections:

 a) Paragraph 22 regarding inspection of the physical premises of
 the property.
 b) Paragraph 23 regarding inspection of rent roll, leases and
 operating and expense records.
 c) Paragraph 19 regarding termite and pest inspection.

5. Should Buyer extend the date for close of escrow by sixty (60) days
 pursuant to Item 18 of the above-referenced contract, the additional
 Twenty-Five Thousand Dollars ($25,000.00) to be added to the purchase
 price shall become part of the all-inclusive note and trust deed.

6. LIQUIDATED DAMAGES: BUYER RECOGNIZES THAT SELLER'S PROPERTY WILL
 BE REMOVED FROM THE MARKET DURING THE EXISTENCE OF THIS AGREEMENT
 AND THAT IF THIS TRANSACTION IS NOT CONSUMMATED BECAUSE OF BUYER'S
 DEFAULT, SELLER SHOULD BE ENTITLED TO COMPENSATION FOR SUCH DETRIMENT:
 HOWEVER, IT IS EXTREMELY DIFFICULT AND IMPRACTICAL TO ASCERTAIN THE
 EXTENT OF THE DETRIMENT AND, TO AVOID THIS PROBLEM, BUYER
 AND SELLER AGREE THAT IF THIS TRANSACTION IS NOT CONSUMMATED
 BECAUSE OF BUYER'S DEFAULT, SELLER SHALL BE ENTITLED TO RECOVER
 FROM BUYER THE AMOUNT OF ALL DEPOSITS, THE SUM OF TWENTY-FIVE
 THOUSAND DOLLARS ($25,000.00) IF BUYER DOES NOT ELECT TO EXTEND
 CLOSE OF ESCROW PURSUANT TO ITEM 18 OR THE SUM OF THIRTY-FIVE
 THOUSAND DOLLARS ($35,000.00) IF BUYER DOES ELECT TO EXTEND CLOSE
 OF ESCROW PURSUANT TO ITEM 18, WHICHEVER IS APPLICABLE TOGETHER
 WITH ANY INTEREST ACCRUED THEREON, AS LIQUIDATED DAMAGES. SAID
 AMOUNT HAS BEEN AGREED UPON, AFTER NEGOTIATION, AS THE PARTIES'
 BEST ESTIMATE OF SELLER'S DAMAGES. THE PARTIES AGREE THAT THE SUM
 STATED ABOVE AS LIQUIDATED DAMAGES SHALL BE IN LIEU OF ANY OTHER
 RELIEF TO WHICH SELLER MIGHT OTHERWISE BE ENTITLED BY VIRTUE OF
 THIS AGREEMENT OR BY OPERATION OF LAW.

7. The amount of the commission payable to Coldwell Banker Commercial Real Estate Services for services rendered in effecting this sale is hereby reduced from $53,000.00 to $52,619.93, of which $49,619.93 shall be payable in cash at close of escrow. The remaining $3,000.00 shall be evidenced by a note executed by Seller in favor of Coldwell Banker Commercial Real Estate Services. Said note shall be due and payable four (4) years from close of escrow.

8. If HR 6883 or comparable legislation is not enacted into law so as to apply to this transaction, the amount of Buyer's down payment shall be reduced to Three Hundred Fifty Thousand Dollars ($350,000.00) and the principal amount of the all-inclusive note and deed of trust shall be increased to Nine Hundred Seventy-Five Thousand Dollars ($975,000.00), or to One Million Dollars ($1,000,000.00) if Buyer elects to defer close of escrow pursuant to Item 18. In such event, the note shall provide for a principal reduction payment of Twenty-Five Thousand Dollars ($25,000.00) on January 2, 1982.

Except as described herein, the above-referenced contract shall remain in full force and effect:

_Thomas G. Hong_ 10-2-80 _[signature]_ 9/30/80.
Thomas G. Hong Date Somerset Associates Date

_Jennie F. Hong_ 10/2/80 _[signature]_ 10-8-80
Jennie F. Hong Date Somerset Associates Date

_[signature]_ 10/4/80
Allen G. Fong, M.D. Date

_[signature]_ 10-4-80
Gladys J. Fong Date

Phillip A. Peller
by: _[signature]_ 10-8-80
by: _[signature]_ 10/6/80
His attorneys in fact

Howard D. Boone
by: _[signature]_ 10-5-80
by: _[signature]_ 10/6/80
His attorneys in fact

Richard V. Reynolds
by: _[signature]_ 10-8-80
by: _[signature]_ 10/6/
His attorneys in fact

Steven J. Reynolds
by: _[signature]_ 10-8-80
by: _[signature]_ 10/
His attorneys in fact